# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                             Case No. 8:15-CR-422-T-24JSS

HERLIN EDUARDO VALENCIA-MARTINEZ
_____/

## SENTENCING MEMORANDUM IN SUPPORT OF
## A MINOR ROLE REDUCTION AND/OR A
## DOWNWARD VARIANCE PURSUANT TO 18 U.S.C. §3553(a)

COMES NOW, the Defendant, HERLIN EDUARDO VALENCIA-MARTINEZ, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2 and 18 U.S.C. §3553(a), hereby files this Sentencing Memorandum in support of his previously-lodged minor role objection and in further support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a)(2). As grounds in support thereof, Mr. Valencia-Martinez shows as follows:

### FACTUAL AND PROCEDURAL HISTORY

Mr. Valencia-Martinez is an Ecuadorian national who was born on March 5, 1986, in Ecuador. PSR ¶35. He is one of three children born to Victor Valencia and Victoria Martinez. *Id.* Mr. Valencia-Martinez' father is 60 years old and attempts to support himself as a handyman and by selling fish. *Id.* Mr. Valencia-

Martinez' mother is deceased; having passed away 14 to 15 years ago from what Mr. Valencia-Martinez believes to be "not from natural causes," but instead some form of "witchcraft." *Id.* Mr. Valencia-Martinez was born into poverty and lived an underprivileged existence where he and his siblings were abandoned by their father and raised primarily by their mother who sold food as a meager means of supporting the family. PSR ¶36. As a result of their poverty, Mr. Valencia-Martinez was forced to leave school in the second grade to seek employment to help financially support the family. PSR ¶¶36, 45. Today, Mr. Valencia-Martinez can neither read nor write. PSR ¶45. As a result of his limited education and the very scarce employment opportunities in Ecuador, Mr. Valencia-Martinez has struggled to support himself and his family as a fisherman where he can, at best, earn $40 to $50 per fishing trip netting no more than $300 per month. PSR ¶46.

As an adult living on this meager monthly fishing income, Mr. Valencia-Martinez has struggled to support his common law wife and her 8 year old child. PSR ¶38. Mr. Valencia-Martinez' difficult financial circumstances formed the backdrop for his involvement in the present case. Specifically, Mr. Valencia-Martinez became involved in the instant offense when he was approached by an individual who offered him $25,000 to participate as a crew member of a go-fast vessel transporting a load of cocaine from the coast of Colombia to coastal waters off of Central America. PSR ¶13. The money Mr. Valencia-Martinez was earning

as a fisherman in Ecuador was not sufficient to provide for his family or fulfill his dream to buy a home for his children, and therefore he agreed to participate in the transportation operation, which he viewed as a once in a lifetime financial opportunity. PSR ¶¶13, 16. While on the go-fast vessel, Mr. Valencia-Martinez took direct orders from the Captain, Velazquez-Estupinan, and Mr. Valencia-Martinez had no knowledge as to the total quantity of cocaine that they were transporting. PSR ¶13. Additionally, he has no ownership stake in the cocaine nor was he involved in the organization or planning of the transportation operation. PSR ¶13. He received a $2,000 payment with the promise of an additional $23,000 upon the successful completion of the transportation operation. *Id*. Mr. Valencia-Martinez' entire role in the transportation operation was to simply act as a "deck hand" to assist others in the transportation of the drugs from point A to point B by way of a go-fast vessel on the open sea.

Unfortunately for Mr. Valencia-Martinez, on September 23, 2015, the go-fast vessel was spotted by a maritime patrol aircraft approximately 225 nautical miles southwest of El Salvador. PSR ¶11. The Coast Guard pursued them and, after bales of cocaine were jettisoned into the water, the go-fast vessel was apprehended and the three-man crew consisting of Mr. Valencia-Martinez, Alvaro Velazquez-Estupinan, and Ramiro Arturo Garcia-Trujillo were apprehended. *Id.* Subsequent investigation revealed that Mr. Velazquez-Estupinan was the Captain

of the go-fast vessel. PSR ¶12. Ultimately 29 bales containing approximately 780 kilograms of cocaine was recovered from the ocean. PSR ¶11.

The three crewmembers were brought to the Middle District of Florida and, on October 8, 2015, they were all three charged by Indictment with a Conspiracy to Possess with the Intent to Distribute 5 Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States. PSR ¶¶1 - 3. Mr. Valencia-Martinez immediately began to cooperate with the Government and he pleaded guilty on December 16, 2015, pursuant to a written plea agreement. PSR ¶5. On December 21, 2015, this Court accepted Mr. Valencia-Martinez' guilty plea and adjudicated him guilty. PSR ¶9. The sentencing hearing in this cause is set for Tuesday, March 22, 2016, at 8:30 a.m. *Id*.

## GUIDELINE CALCULATIONS

Because Mr. Valencia-Martinez was involved in a cocaine trafficking conspiracy that involved more than 450 KG, pursuant to U.S.S.G. §2D1.1(c)(1), his base offense level is calculated in the Presentence Report to be a level 38. PSR ¶17. As a result of his qualification for the "safety value" provision, Mr. Valencia-Martinez' base offense level is reduced by 2-levels, resulting in an adjusted offense level of 36. PSR ¶¶18, 22. With a 3-level reduction for "acceptance of responsibility" it is suggested that the total offense level is 33. PSR ¶¶24-26. Mr. Valencia-Martinez has no prior arrests, convictions, or contacts with law

enforcement and, as such, is a criminal history category I offender. PSR¶¶27-29. With a total offense level of 33 and a criminal history category I, Mr. Valencia-Martinez' advisory guideline imprisonment range is 135 - 168 months (11 years, 3 months - 14 years). PSR ¶49.

In the Presentence Investigation Report, Mr. Valencia-Martinez is not given any reduction for his role in the offense. PSR ¶20. He objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and a corresponding reduction in his base offense level pursuant to U.S.S.G. §2D1.1(a)(5). *See* PSR Addendum.

## MINOR ROLE GUIDELINE OBJECTION

U.S.S.G. §3B1.2 provides for either a 4-level minimal role, 2-level minor role, or a 3-level intermediate role reduction. Specifically, §3B1.2(b) provides for a 2-level reduction if "the defendant was a minor participant in any criminal activity." The determination whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case." *See* U.S.S.G. §3B1.2 App. N. 3(C). The Application notes provide guidance on distinguishing between a "minimal" and a "minor" participant. Specifically the application notes provide that a minimal participant is:

> [A person] who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and understanding of the scope and

structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that this downward adjustment for minimal participant will be used infrequently.

U.S.S.G. § 3B1.2, App. N. 4.

In contrast to a minimal participant, the Application Notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal."  Additionally, in contrast to the Commission's observation that a "minimal participant" reduction should be used infrequently by a sentencing court, there is no such prohibitive language within the description of a "minor" participant.  In fact, the Sentencing Commission has recently as part of the November 1, 2015, amendments to the guidelines expressed the opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the Commission had intended. *See* U.S.S.G. Appendix C, amend. 794.

In the present case, Mr. Valencia-Martinez arguably does not qualify for a minimal role reduction but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he has pleaded guilty.  He is less culpable than the captain of the go-fast vessel, the individual who recruited him to participate in the smuggling operation, the individuals organizing the transportation of the cocaine, the buyers of the cocaine, the sellers of the cocaine, and the drug dealers who will ultimately distribute the

cocaine. At most, Mr. Valencia-Martinez is equally culpable with the third crewmember on the vessel, Ramiro Arturo Garcia-Trujillo, thus making him "substantially less culpable then the average participant."

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1(a)(5) provides that "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels." Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), the Court shall additionally reduce that base offense level based on the defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

Over the past 14 years, the Sentencing Commission, out of concern that sentencing courts around the country have been under-applying or misapplying the mitigating role reduction, has attempted to provide sentencing courts added guidance on when it is appropriate to apply the §3B1.2 mitigating role and corresponding §2D1.1(a)(5) base offense reductions. Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G.

§2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640. As such, if a drug offender qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the defendant may receive is a level 30.

*Id*. The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
>
> [ ] The amendment modifies §2D1.1(a)(3) to provide a maximum base offense level of 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role). *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers") whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*
>
> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2. The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appx. C, Amend 640 (*emphasis added*).

As noted by the Sentencing Commission as part of the November 1, 2015, amendment to the mitigating role provision, after conducting a recent in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission.  Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* U.S.S.G. App. C, Amend. 794.

Based on this study's findings, the Commission's clarifying November 1, 2015, amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.*  It is the intent of the Commission by way of the Amendment to address the Commission's observation "that courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible defendants if the defendant

was considered 'integral' to the successful commission of the offense." *Id*.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id*. To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id*. Specifically, the Commission's November 1, 2015, factors direct a sentencing court to consider:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

     (v)    the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2, App. N. 3(C).

Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

In the present case, the Commissions' clarifying amendment makes it abundantly clear that Mr. Valencia-Martinez should receive a 2-level minor role reduction and by consequence a 4-level reduction in his base offense level pursuant to §2D1.1(a)(5)(iii). Factually, Mr. Valencia-Martinez was hired by a Colombian drug trafficking organization to act as a courier by transporting cocaine from Colombia to Central America while on-board a go-fast vessel. He was to receive financial compensation for transporting the drugs and he had no ownership or proprietary interest in the drugs. To put it simply, he was being paid to perform the limited task of acting as a "deckhand" during the transportation of the drugs from one country to another by way of the open sea.

Mr. Valencia-Martinez' role in the drug trafficking organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation or even the Captain of the go-fast vessel; he was simply being paid along with other crewmembers to perform the task of assisting in the transporting of a vessel containing cocaine from the sellers to the buyers of the cocaine. He is, in fact, the exact type of low-level participant who should be receiving a mitigating role reduction (*i.e.*, drug courier) that the Sentencing Commission has identified in the 2002 amendment to U.S.S.G. §2D1.1, as well as in the November 2015, amendment to U.S.S.G. §3B1.2. It is clear from the legislative history of these two amendments that low-level transporters of drugs who are working for a larger drug trafficking organization are the specific type of offender the Commission has always intended should receive a minor role reduction and corresponding §2D1.1(a)(5) adjustment in their base offense level.

The fact that a large drug trafficking organization is involved in the distribution of cocaine in amounts larger than the amount of cocaine Mr. Valencia-Martinez and his indicted co-defendants were apprehended with does not in any way preclude Mr. Valencia-Martinez from being eligible for a mitigating role reduction. As noted in the Commission's clarifying November 2015, amendment:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines. *For example, a defendant*

> *who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs* and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stores may receive an adjustment under the guidelines."

USSG §3B1.2, App. 3(A) (emphasis added).

Additionally, in analyzing the clarifying, non-exhaustive list of factors in the proposed amendment, it is clear that each and every factor would support Mr. Valencia-Martinez receiving a mitigating role reduction. As a simple courier or transporter of drugs, Mr. Valencia-Martinez:

(i)     He had little or no degree of understanding of the scope and structure of the overarching criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

(ii)    He had no role in the planning or organization of the criminal activity, including no role in the planning or organization of the transportation operation itself.

(iii)   He had no decision-making authority, nor did he have any influence regarding the exercise of decision-making authority. He simply followed the directions of others, including direct orders from the Captain of the go-fast vessel.

(iv)    The nature and extent of his activity and participation was limited to his assistance with the transportation of packages of cocaine from Columbia to Central America; he had little or no responsibility or discretion in performing these transportation functions, and at all times during the transportation took direct orders from the Captain of the vessel.

(v)     The only benefit Mr. Valencia-Martinez was to receive for his transportation function of a single load of cocaine was $25,000

which is especially minimal in light of the street value of the drugs he was transporting.

(vi)   He had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, assisting in the transportation of drugs).

Therefore, based upon the newly created factors this Court is directed by the Sentencing Commission to specifically consider in determining when to apply a mitigating role reduction pursuant to U.S.S.G. §3B1.2, this Court must find that Mr. Valencia-Martinez qualifies for a 2-level minor role reduction and must adjust his base and total offense levels accordingly.

## THE ABROGATION OF THE REASONING IN *RODRIGUEZ DE VARON* AND SIMILAR CASES BY THE MITIGATING ROLE AMENDMENT TO THE GUIDELINES

Contrary to the United States Probation Office's assertions in responding to Mr. Valencia-Martinez' minor role objection, the Eleventh Circuit opinion in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) should no longer be used by this Court to preclude Mr. Valencia-Martinez from eligibility for a mitigating role reduction. *See* PSR Addendum.  In fact, it is clear from the legislative history of the November 1, 2015, amendment to the mitigating role provision that the Sentencing Commission has abrogated the reasoning in *Rodriguez De Varon*. *See* generally U.S.S.G. Appendix C, Amend. 794.   As previously noted after conducting an in-depth national study, the Sentencing Commission enacted the November 1, 2015, version of U.S.S.G. §3B1.2 (Mitigating Role).  This change in

the guidelines was in response to the Sentencing Commission's findings that sentencing courts were not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.

*Id.*

Based on this study's findings, the Commission's clarifying amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants, such as Mr. Valencia-Martinez, who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* As noted in the legislative history of the amendment, it was the specific intent of the Commission by way of the Amendment to address the Commission's observation "that courts often deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id.* The Eleventh Circuit opinion, in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999), although not specifically named by the Sentencing Commission, is one such case that has justified the denial of a mitigating role reduction where the evidence supports a finding that the defendant was "integral" or played an "important" or "essential" role in the transportation of the drugs he or she transported. *Rodriguez De Varon*, at 943

("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs" justifying a denial of a mitigating role reduction).[1]

The rationale in the *Rodriguez De Varon* opinion, which has now been viewed unfavorably by the Sentencing Commission, has been used exclusively in this District to deny minor role reductions for transporters of large quantities of cocaine while on board a vessel subject to the jurisdiction of the United States. Despite the clear intent of the Sentencing Commission, the Government and the Probation Department are continuing to rely upon this now-flawed opinion from the Eleventh Circuit to justify a denial of a role reduction in the present case. For this Court to continue to follow the flawed reasoning in the *Rodriguez De Varon* opinion would be contrary to the intent of the Sentencing Commission and Congress and would defeat the clear intent of the Sentencing Commission to increase the rate of mitigating role reductions for otherwise-qualified defendants.

---

[1]"Couriers, like *De Varon*, who are convicted solely of the crime of importing drugs and whose base offense levels reflect only those drugs they personally brought into this country, are not eligible for a role reduction of any kind. It will always be clear error for a district court to grant a courier a role reduction in such circumstances. *See United States v. Lampkins*, 47 F.3d 175, 181 (7th Cir. 1995)('It makes no sense to claim that one is a minor participant in one's own conduct'); *United States v. Burnett*, 66 F. 3d 137. 140 (7th Cir. 1995)('Where a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense'). This conclusion necessarily follows from the guidelines, from principles recognized in the Court's opinion in this case, and from common sense." 174 F.3d at 947 (Carnes, Concurring).

In the eyes of the Sentencing Commission, the *Rodriguez De Varon* opinion has been inappropriately focusing on whether the courier or transporter of drugs was important or essential to the importation offense in determining whether to apply a mitigating role reduction. It is the Commission's clear intent that a sentencing court not focus on whether the task performed was "integral" or "essential," but, instead, to focus on the task the defendant performed in relationship to the larger conspiracy in which they were involved. This fact is clearly evidenced by the fact that the application notes now provide that "a defendant who does not have a proprietary interest in the criminal activity and who is simply paid to perform tasks should be considered for an adjustment under this guideline." *See* U.S.S.G. §2B1.2, App. N. 3.

In response to the Commission's concerns, the Sentencing Commission's amendment to the guidelines was specifically designed to address the flawed approach taken by *Rodriguez De Varon* and other courts. As noted in the legislative history of the mitigating role amendment:

> Next, the amendment addresses cases in which the defendant was 'integral' or 'indispensable' to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a defendant may be denied a mitigating role adjustment solely because he or she was "integral" or "indispensable" to the commission of the offense. [Citations Omitted] [T]he Amendment revises the commentary to emphasize that the "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative" and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.

U.S.S.G. Appendix C, Amend. 794.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id.* Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment." *Id.* Specifically, as noted above, the Commission's newly-created factors direct a sentencing court to consider:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

(v)     the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G §3B1.2, App. N. 3(C).

As evidenced by these enumerated factors, the Sentencing Commission is directing a sentencing court to examine the defendant's degree of understanding and participation in the larger drug trafficking conspiracy and not whether they were "essential" or "integral" to the crime for which they were being held responsible. Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

As such, it is clear from the legislative history of the clarifying amendment to U.S.S.G. §2B1.2 (Mitigating Role) that *Rodriguez De Varon* and similar cases have been abrogated by the Sentencing Commission and, by Congress who passed the amendment. While the legislative history to the amendment does not specifically reference *Rodriguez De Varon*, it does specifically reference *United States v. Skinner*, 690 F.3d 772, 783-784 (6th Cir. 2012); *United States v.*

*Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008); *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); and *United States v. Carter,* 971 F.2d 597, 600 (10th Cir. 1992) - all of which rely upon the same flawed reasoning in *Rodriguez De Varon* that if a defendant plays an critical, integral, essential, important, or indispensable role in the criminal activity, they are ineligible for a mitigating role reduction. *See* U.S.S.G. Appendix C, Amend. 794. Clearly, this approach is no longer applicable and thus this Court should not look to the *Rodriguez De Varon* opinion but the amended guideline and the factors enumerated by the Sentencing Commission for this Court's consideration.

Of further significance to the present case, in listing the factors this Court should consider when determining the applicability of a mitigating role reduction, the Commission did not reference the amount of drugs involved in the criminal activity. In contrast, in *Rodriguez De Varon*, the Eleventh Circuit relied heavily on the amount of drugs found in the courier's possession. As noted by the Court in *Rodriguez De Varon*, "because the amount of drugs in a courier's possession – whether very large or very small – may be the best indicator of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case." *Id*. at 943. Numerous courts in this District, following the guidance of *Rodriguez De Varon*, have previously denied a minor role reduction for

defendants similarly-situated as Mr. Valencia-Martinez, based on the large quantity of drugs found on the their vessel or in the water after the drugs had been thrown overboard by the couriers.

In 1999, the Eleventh Circuit found support for the "quantity-of-drugs" factor by pointing to an example found within an Application Note to the then-1999 version of the §2B1.2 guideline. *Id.* However, subsequent to the issuance of the *Rodriguez De Varon* opinion, the illustrative example related to the quantity of drugs in the application note was deleted from the guidelines by the Sentencing Commission in the November 1, 2001, version of the guidelines. *See* Nov. 1, 2001 §2B1.2 guideline, App. Notes generally. The removal of the illustrative "quantity of the drugs" example clearly evidences the Commission's intent that the amount of drugs involved should not be a determinative factor. In fact, this intent is further exemplified by the present version of the Guidelines, which lists five factors for a court's consideration, none of which focuses on the amount of drugs transported and certainly none of which suggests that in an extreme case the amount of drug could be determinative. As such, contrary to the assertions of the United States Probation Office, in light of the newly amended mitigating role provisions in the guidelines the *Rodriguez De Varon* opinion should no longer be relied upon by this Court in determining the eligibility for a mitigating role reduction. Instead, this

Court should turn to the factors enumerated in the November 1, 2015, guidelines, all of which support Mr. Valencia-Martinez receiving a minor role reduction.

Therefore, Mr. Valencia-Martinez should receive a 2-level minor role reduction and a corresponding 4-level U.S.S.G. §2D1.1(a)(5)(iii) adjustment in his base offense level. With these two corrections, Mr. Valencia-Martinez' properly-calculated total offense level is 27. With a total offense level of 27 and a criminal history category I, Mr. Valencia-Martinez' advisory guideline imprisonment range is 70 - 87 months.[2]

## REQUEST FOR A REASONABLE SENTENCE

In light of the mitigating history and characteristics of Mr. Valencia Martinez as well as the facts and circumstances surrounding the non-violent nature of his offense, it is respectfully suggested that a sentence of 70 months to be followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. §3553(a).

Mr. Valencia-Martinez is a 30-year-old impoverished Ecuadorian national who is the primary financial supporter for his common law wife and her minor child. As a child, Mr. Valencia-Martinez was raised with his siblings by a single

---

[2]The Government has filed a "substantial assistance" motion that will both eliminate the 10-year minimum mandatory penalty and authorize this Court to depart downward in Mr. Valencia-Martinez' advisory guideline imprisonment range. Doc. 49. A 2-level downward departure pursuant to U.S.S.G. §5K1.1 would result in an advisory range of 57 - 71 months.

mother suffering from extreme poverty. He can neither read nor write and has worked since the age of ten, most recently earning no more than $300 a month.

Mr. Valencia-Martinez has no prior criminal history or contacts with law enforcement; he became involved in the present non-violent activity as a means to supplementing his meager fisherman's income and to purchase a home for his children so as to remove them from the poverty he has endured his entire life. In exchange for the promise of $25,000 - which is more than six times greater than the amount of money he could make in a year as a fisherman - Mr. Valencia-Martinez agreed to act as a "deckhand" on a go-fast vessel loaded with more than 450 KG cocaine while the vessel transport the cocaine from Colombia to Central America. As noted above, his role in this large criminal drug trafficking conspiracy was minor in comparison to other participants in the drug trafficking operation.

While Mr. Valencia-Martinez' offense is non-violent in nature, it cannot be disputed that he was involved with a crime involving a large quantity of cocaine, which would support the imposition of a significant term of incarceration. However, a sentence greater than 70 months' imprisonment to be followed by a 5-year term of supervised release would be "greater than necessary" to address the seriousness of Mr. Valencia-Martinez' criminal behavior, especially in light of his history and characteristics, his motivation for becoming involved in this unlawful

activity, his mitigating role in the offense, and his cooperative efforts.

Given the significant quantity of cocaine involved in the offense it cannot be disputed that a term of incarceration is necessary to both specifically deter Mr. Valencia-Martinez and others from future similar criminal conduct. It is simply suggested that a 70-month term of federal incarceration to be followed by a 5-year term of supervised release will be equally efficient as any term of imprisonment greater than 70 months. This is true, especially in light of the fact that Mr. Valencia-Martinez has never received a prior term of imprisonment and, in fact, has never previously had any contacts with law enforcement in this country or in his home country.

Mr. Valencia-Martinez is mindful that he has committed a serious crime and that he needs to be punished. It is respectfully suggested that a total sentence of 70 months to be followed by a 5-year term of supervised release would provide "just punishment" for the offense, would "reflect the seriousness of the offense," and would "promote respect for the law." Additionally, such a sentence will reasonably reflect Mr. Valencia-Martinez' mitigating role in this case, his cooperative efforts, his history and characteristics and will also more than adequately punish him for his non-violent, although very serious criminal activities. At the same time, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Valencia-Martinez as

an individual and appropriately taken into consideration his unique human failings which mitigate his crime and his punishment.

WHEREFORE, the Defendant, HERLIN EDUARDO VALENCIA-MARTINEZ, respectfully moves this Honorable Court to sustain his minor role objection, to grant the Government's "substantial assistance" motion, and based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 70 months of incarceration to be followed by a 5-year term of supervised release.

DATED this 16th day of March, 2016.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Adam B. Allen*
Adam B. Allen
Florida Bar No.0998184
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Adam_Allen@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of March, 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Maria-Chapa Lopez

*/s/ Adam B. Allen*
Adam B. Allen
Assistant Federal Defender